## THE FAIR v. MANNY LEMON JUICE EXTRACTOR CO.

(Circuit Court of Appeals, Seventh Circuit. April 10, 1906.)

### No. 1,134.

PATENTS—VALIDITY AND INFRINGEMENT—LEMON JUICE EXTRACTOR.

The Manny patent, No. 415,048, for a lemon juice extractor (Claim 3), which claims broadly the combination of a base of dish form, a cone extractor having juice-releasing projections on its surface, and a strainer located above the bottom of the dish-formed portion of the base, is void for anticipation by the Mitchell British patent, No. 16,910, of 1889. Claim 4, which covers a specific modification of the Mitchell structure as limited thereby, *held* not infringed by the device of the Easley patent, No. 644,736, which embodies a different modification of the same combination.

Appeal from the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Robt. B. Killgore, for appellant.

L. L. Morrison, for appellee.

Before GROSSCUP and BAKER, Circuit Judges, and WRIGHT, District Judge.

BAKER, Circuit Judge, delivered the opinion of the court.

From a decree enjoining appellant from infringing patent No. 415,048, November 12, 1889, to Manny, for a lemon juice extractor, this appeal is prosecuted.

The claims are of the combination order; and, as the controversy concerns the validity of the broader claims and the infringement of the narrower, one of each is given.

"(3) A lemon juice extractor, consisting of a base of dish form, a cone extractor having juice-releasing projections on its surface, and a strainer located above the bottom of the dish-formed portion of the base, whereby the juice is separated from the seeds and pulp as it is extracted, substantially as set forth.

"(4) A lemon juice extractor, consisting of a reservoir-base, a cone extractor, and a strainer composed of uprising fingers between the cone and outer wall of the base, substantially as set forth."

Mitchell's British patent, No. 16,910, May 18, 1889, shows a cone extractor having juice-releasing projections on its surface. For receiving the juice, a separate receptacle, such as a tumbler, is one method provided. If a separate receptacle is used, the cone may be either of two kinds—one with holes in the cone itself, the other with holes in the bottom of a rimmed flange about the base of the cone. If of the first type, the cone is necessarily hollow; if of the second, " it may be solid." As the second is the only type that can be used in a lemon juice extractor of the kind in suit, which has as an integral part thereof a reservoir-base, it is only necessary to examine particularly Mitchell's construction in that regard. "The cone may be made with vertical ribs (Fig. 1), or may have rounded projections (Fig. 3), or be serrated or jagged (Fig. 4)." "The cone is by preference made with a rim or flange, with a number of slots, holes, or openings, to allow the juice to pass through to the collecting receptacle." Fig. 6 of the drawings discloses radial slots in the horizontal portion of the flange, and Fig. 7 shows that the outer edge of the flange is upraised, forming an annular dam, in which the pulp and seeds may be held while the juice passes through the slots. "The extractor, as shown at Figs. 8 and 9, is made in one piece, with a saucer or dish, which receives the juice from the lemon, and from which the juice can be easily emptied." Figs. 8 and 9 alone do not show any means of separating the juice from the pulp and seeds; but, as that had already been described and illustrated, these figures evidently were intended only to picture the location of the strainer "above the bottom of the dish-formed portion of the base." So that, when the description and drawings are all read together, it becomes manifest that the elements and the combination of claim 3 in suit were fully anticipated by Mitchell.

Claim 4 is distinguished from claim 3 by the limitation that the strainer shall be "composed of uprising fingers between the cone and outer wall of the base." That is, the invention involved in claim 4 consists merely in the specific modification of the Mitchell device. Appellant's device, made under Easley's patent, No. 644,736, March 6, 1900, differs from Mitchell's in this—that the slots are in the rim of the annular dam, instead of in the bottom. The slots in the rim and appellee's "uprising fingers" perform the same office in the same combination, and infringement would be undoubted if appellee were entitled to the range of equivalency that belongs to the generic inventor. But both parties being mere improvers in an open field, the grant of the Easley patent for a specific form of adaptation of the prior art raises the presumption that the differences in the devices before us are substantial, not colorable, and the heavy restrictions put upon claim 4 by the Mitchell patent sustain the presumption.

The decree is reversed, with the direction to dismiss the bill for want of equity.